(No. 24298.—■■■■■■■■)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS W. MACK, Plaintiff in Error.

*Opinion filed December 17, 1937.*

Orr, J., specially concurring.

William E. Helander, and Sternberg & Sternberg, (Erving S. Sternberg, of counsel,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, Blair L. Varnes, and Robert E. Wright, of counsel,) for the People.

Mr. Justice Wilson delivered the opinion of the court:

An indictment consisting of four counts was returned by the grand jury in the criminal court of Cook county in February, 1935, charging Louis W. Mack with the crime of larceny by embezzlement. On a jury trial on two of the counts (two counts having been withdrawn) a verdict of guilty was rendered, judgment was entered on the verdict and the defendant was sentenced to imprisonment in the penitentiary. He sued out this writ of error to review the record of his conviction.

The evidence on the part of the People tended to show that the defendant, as an attorney, represented an Indiana corporation known as the Nurre Companies, Inc., located at Bloomington, Indiana. The corporation, hereafter called the Nurre Company, sent to the defendant a draft for $12,000 payable to his order to be used in the purchase of a mortgage of certain property in which the Nurre Company had an interest. The defendant deposited the draft in a Chicago bank in his own name in a special account,

and immediately thereafter obtained a cashier's check for $4,000, which was charged against the account. The mortgage was not purchased and, previous to the return of the indictment, only a part of the money sent to the defendant was returned by him to the Nurre Company. After correspondence and many conferences and telephone communications between the defendant and two of the officers of the Nurre Company, the corporation employed another attorney in an attempt to ascertain the fact with respect to the proposed purchase of the mortgage and obtain the money, or the part unaccounted for, which had been sent to the defendant by the Nurre Company. After the return of the indictment, and during the hearing of a previous trial upon the charge of embezzlement, a financial adjustment was effected whereby a balance due the defendant for legal services rendered to the Nurre Company over a period of three years, was credited to the defendant and he paid the remaining amount, above the credit found to be due the Nurre Company, to that corporation.

Several defenses were interposed at the trial and at its conclusion it was contended that the evidence produced was insufficient to prove the defendant's guilt under the indictment. The jury, however, returned a verdict of guilty, but recommended leniency in the sentence.

Before the trial the defendant had entered a plea of not guilty which he was permitted to withdraw. He then moved to quash the indictment because of an alleged violation of the statute in the selection of eight of the twenty-three jurors constituting the grand jury which indicted him. Eight of these jurors were selected by the sheriff of Cook county from the body of the county. It is contended that all of the twenty-three grand jurors should have been selected by lot from the jury commissioners' list, or box, in the office of that body. Chapter 78 of the Illinois statutes contains the complete statutory requirements as to the qualifications and selection of petit and grand jurors through-

out the State. The first part of the chapter is a general act relating to jurors generally. In the last part of the chapter a special act, known as the Jury Commissioners act, pertains to the method of selecting petit and grand jurors in counties in the State having a population of more than 250,000 inhabitants. In 1931 the method of the selection of petit and grand jurors in both classes of counties was well defined. Section 9 of the general act on jurors provided: "Sec. 9. If a grand jury shall be required by law or by the order of the judge for any term of court, it shall be the duty of the county board in each of the counties in this State wherein such court is directed to be holden, at least twenty days before the sitting of such court, to select twenty-three persons, possessing the qualifications as provided in section 2 of this act, and as near as may be a proportionate number from each town or precinct in their respective counties, to serve as grand jurors at such term; and to cause their clerk, within five days thereafter, to certify the names of the persons so selected as grand jurors to the clerk of the court for which they are selected, who shall issue and deliver to the sheriff of the county wherein the court is to be held, at least ten days before the term of the court for which they shall have been selected, or during term time if the court should so order, a summons commanding him to summon the persons so selected as aforesaid, to appear before such court at or before the hour of eleven o'clock A. M. on the first day of the term, or upon such other day as the judge shall direct, to constitute a grand jury for such term. The sheriff shall serve such summons in the manner provided in section 11 of this act, for service of summons on petit jurors, and for any refusal or neglect so to do, shall be deemed guilty of a contempt of court, and may be fined therefor as provided in section 11 of this act, for default in summoning petit jurors. If for any reason the panel of grand jurors shall not be full at the opening of such court, the judge shall direct

the sheriff to summon from the body of the county a sufficient number of persons, having the qualifications of jurors as provided by this act, to fill the panel." Cahill's Stat. 1931, p. 1752.

Paragraph 34 of the chapter on jurors, which is section 9 of the act in relation to jury commissioners, in force in counties of the State having a population of more than 250,000 inhabitants, provided: "One or more of the judges of each court of record of the county or of municipalities within the county shall certify to the clerk of the court the number of petit jurors required each month. The clerk shall then repair to the office of the jury commissioners and there, in the presence of the persons mentioned in section 8 of this act, [either two jury commissioners or one jury commissioner and a judge of a court of record, and the clerk of the jury commissioners, if there be one] proceed to draw by lot the necessary number of names from those made available for such drawing as in section 8 of this act provided. The clerk shall thereupon certify to the sheriff the electors whose names are so drawn, to be summoned according to law. If more jurors are needed during the month, a judge of the court shall so certify, and they shall be drawn and certified forthwith in the manner above provided. Whenever a grand jury is required by law or by order of the court, it shall be drawn and certified in like manner." Cahill's Stat. 1931, p. 1755.

In 1933 paragraph 9 of the Jurors act (the general act) was amended making the method of selecting jurors therein provided applicable in the criminal court of Cook county, notwithstanding the existence of the special or Jury Commissioners act then applicable to counties having a population of more than 250,000 inhabitants. (Cahill's Stat. 1933, p. 1723.) No change was made in paragraph 34 (section 9 of the Jury Commissioners act) or in any of the other sections of the Jury Commissioners act at that session of the General Assembly. (Cahill's Stat. 1933, p. 1726.) At the

third special session of the General Assembly in 1934, paragraph 9 of the Jurors act was amended, omitting any reference to the criminal court of Cook county, and providing that nothing in the act relating to the method of selecting the grand jury should apply to counties of more than 250,000 inhabitants. (Laws of 1933-34, 3rd Sp. Sess. pp. 203, 204.) That provision remained at the time the indictment was returned in this case. (State Bar Stat. 1935, p. 1966.) As was stated in another section of the amending sections, the amendment in 1934 was enacted because of the fact that a prior amendment (that of 1933) had created some doubt as to the proper method of selecting grand jurors in counties having a population of more than 250,000 inhabitants. The effect of the amendment in 1933 was anomalous, in that notwithstanding there was provision for a jury commission with specific powers relative to the selection of jurors in counties having a population of more than 250,000 inhabitants, it was made the duty of the county board to make such selection, with no mention of jury commissioners' duties in such counties. When the amendment of paragraph 9 of the Jurors act in 1934, withdrew from the operation of the act, as amended in 1933, counties having a population of more than 250,000 inhabitants, the method of selecting grand jurors then became the same as it had been in 1931 in counties of the class of Cook county. When the legislature treats a subject in a general manner it is not reasonable to suppose that it intends to abrogate particular legislation, to the details of which it has previously given attention, applicable only to a part of the same subject, unless the general act shows a plain intention so to do. The question is one of intention. (1 Lewis' Sutherland Stat. Const. (2d ed.) secs. 274, 275; *People* v. *Sweitzer,* 266 Ill. 459.) In this last cited case we held that it is only in cases where a statute is expressly repealed or where all cases are removed from under its operation, and the statute is thereby entirely abrogated by

a later act, that the former act is repealed by the later one. See, also, *People* v. *National Life Ins. Co.* (*ante,* p. 35.)

At the time the indictment was returned in this case grand jurors in Cook county were required to be selected by lot by the clerk of the criminal court, in the presence of the persons mentioned in section 8 of the Jury Commissioners act, from the names of the persons in the list kept in the jury commissioners' office in that county. (State Bar Stat. 1935, pp. 1969, 1970.) The questions are then presented whether the provision mentioned is merely directory, and, if some of the members of the grand jury are not selected in the manner provided, whether the indictment should be quashed on that account, if prejudice is not otherwise shown. Section 9 of Division 11 of the Criminal Code, among other things, provides that "No indictment shall be quashed for want of the words, 'with force and arms,' or of the occupation or place of residence of the accused, nor by reason of the disqualification of any grand juror." State Bar Stat. 1935, p. 1253.

In *People* v. *Lieber,* 357 Ill. 423, it was shown that sixty names were drawn at the time of the selection of the grand jury which returned the indictment in that case. From this excess panel twenty-three names were selected by lot. We held that there was no authority in the Jurors act for drawing more than twenty-three names, but that where the jurors were selected by the body constituted by law to select jurors, were qualified, and no prejudice shown, an indictment returned by the grand jury so irregularly selected was not invalid. There was no question in that case of the right of the body selecting the jurors to do so, but the opinion specifically recites, that the twenty-three men finally selected and sworn as the grand jury which found the indictment against Lieber "were all drawn and certified by those legally constituted to draw and certify the panel."

In *People* v. *Clampitt,* 362 Ill. 534, we had under consideration a provision of the County Court act in which

it is provided that the judge shall issue a venire and deliver the same to the sheriff or coroner. It was there held that the act did not authorize delivery of the venire to the coroner where the sheriff was present in court and in no way disqualified, as it was mandatory in such case that he perform and be permitted to perform his constitutional duty, and that delivery of the venire to the coroner is authorized only under circumstances prescribed by the statute in regard to coroners. We there said: "Where no attempt is made to comply with the legal method provided for summoning jurors, a challenge to the array must be sustained even though no prejudice is shown," citing *People* v. *Mankus*, 292 Ill. 435; *People* v. *Fudge*, 342 id. 574. When the substantial parts of provisions for the selection of jurors are violated such violations are those of substance and not merely of form amounting only to irregularities. (*People* v. *Fudge, supra.*) The rule that mere irregularities in the selection of a jury will not constitute reversible error is applicable only where there has been an attempt to follow the law and there has been some irregularity in doing so. (*People* v. *Schraeberg,* 347 Ill. 392; *People* v. *Mankus, supra.*) Where the statute points out a method to be pursued in selecting and summoning a jury some attempt must be made to comply with the law. (*People* v. *Healy,* 177 Ill. 306; *People* v. *Mankus, supra.*) A grand jury must be selected substantially in the manner provided by statute. *Marsh* v. *People,* 226 Ill. 464; *People* v. *Green,* 329 id. 576.

The law was not substantially complied with in the selection of eight of the grand jurors who returned the indictment upon which the defendant was convicted. The motion of the defendant to quash the indictment should have been allowed. The court erred in denying the motion.

The judgment of the criminal court is reversed.

*Judgment reversed.*

Mr. Justice Orr, specially concurring:

I concur in the result of this opinion but not in some of the reasoning by which the result was reached. Further, the last two citations, *Marsh* v. *People,* 226 Ill. 464, and *People* v. *Green,* 329 id. 576, are of doubtful validity as they were partially overruled in *People* v. *Lieber,* 357 Ill. 423, and do not support the principle to which they are cited.