(No. 32309.—▮)

The People of the State of Illinois, Defendant in Error, *vs.* Earl Sanders Smith, Plaintiff in Error.

*Opinion filed September 17, 1952—Modified November 20, 1952.*

Frank J. Ferlic, of Chicago, for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Arthur F. Manning, William J. McGah, Jr., John J. Cogan, and George Cotsirilos, all of Chicago, of counsel,) for the People.

Per CURIAM: Earl Sanders Smith, plaintiff in error, hereafter referred to as defendant, was indicted by the grand jury of Cook County, along with Edward G. Smith and Zeno Bickman. The indictment charged them with the murder of one John Sondaj. Zeno Bickman was granted a severance, and Edward G. Smith entered a plea of guilty. Zeno Bickman was tried before the court on waiver of a jury, and was found not guilty. Edward G. Smith entered a plea of guilty, and after trial was adjudged guilty and sentenced to the penitentiary for fourteen years at hard labor. On trial before a jury, presided over by the same judge as in the two instances above, Earl Sanders Smith was found guilty of murder in manner and form as charged in the indictment, the verdict fixing his punishment at death. His motions for new trial and in arrest of judgment were overruled and he was sentenced to death. He now prosecutes this writ of error.

On April 28, 1950, John Sondaj operated a tavern at 2756 South Sacramento Avenue, in the city of Chicago. He resided with his wife, Mary, in living quarters at the rear of the tavern. On that date, about eight o'clock in the evening, defendant and Edward G. Smith entered the tavern and seated themselves at the bar.

Edward G. Smith, testifying for the People, stated that he, Zeno Bickman, and defendant had previously planned the robbery of this tavern, and this day agreed to execute their plan. He and defendant each ordered a drink and then produced their guns and announced their intentions. Mrs. Sondaj came out of the living quarters and he ordered her to keep quiet. As he started for the door, he heard a shot and at that moment deceased grabbed his arm, causing his gun to fire also. The deceased and the defendant were behind him at the time. He said defendant later asked him if he thought the man would die, admitted that he shot deceased, and still later informed him that the death had occurred.

Mary Sondaj, wife of the deceased, testified she heard her husband shout, "It is a holdup," and she therefore went into the tavern from her living quarters. She said Earl Smith told her to get back in the kitchen or he would kill her. She did so, and then ran out into the street calling for help. She heard four or five shots and returned to find her husband shot and bleeding. He died ten days later.

Officer Tony Javurek testified that he and another officer arrested defendant and another person in a 1949 Buick automobile six months later. Under the front seat they found three automatic pistols and one .38 snub-nose revolver. In the trunk he found two sawed-off shot guns. All of these weapons were allowed in evidence, though only one pistol was identified as having been at the scene of the holdup. A ballistics expert testified that it was the gun that fired two cartridge cases found on the floor of the tavern by police officers.

In his own defense, defendant denied he shot and killed John Sondaj. He said that Edward Smith, Zeno Bickman, and himself had been riding around and drinking at various taverns, during which time Edward and Zeno consumed a fifth of whiskey belonging to him, but that he drank no whiskey. He and Edward Smith entered the tavern at 2758 South Sacramento with no prearranged plan of any kind. After ordering a drink, Edward Smith and the bartender engaged in an argument, whereupon Edward drew a gun and shot him. He related that he ran out of the tavern and then heard more shots fired. Edward Smith then came out of the tavern and said he had shot the bartender. Edward Smith left the gun in his car, and he kept it because Edward owed him some money. He claimed he had previously sold the gun to Edward.

Defendant contends that the admission into evidence of two sawed-off shotguns and some ammunition found in the trunk of the automobile which defendant was driving at the time of his arrest constitutes reversible error. No

attempt was made by the People to connect these weapons with the crime committed. On the contrary, the wife of the deceased testified that a nine millimeter automatic, People's exhibit 2, looked like the gun she saw in the defendant's hand. This weapon, along with other revolvers, was found under the front seat of the automobile. Edward G. Smith said that the defendant had a pistol and that People's exhibit 2 resembled the gun defendant carried that night. All the ballistic testimony pertained to revolver pellets and identified People's exhibit 2 as the weapon which fired the fatal shot.

We have held that weapons found in a defendant's possession or control at the time of his arrest upon a murder charge may be the subject of testimony pertaining to the details of the arrest, (*People* v. *Durkin,* 330 Ill. 394,) or may be admissible to show that the accused possessed a weapon suitable for the commission of the crime charged against him, even though no claim is made that the accused actually used that weapon in committing the particular crime. (*People* v. *Dale,* 355 Ill. 330; *People* v. *Lenhardt,* 340 Ill. 538.) In the cases which have upheld the introduction of such evidence, the weapons were either immediately on the person of the accused at the time of the arrest, (*People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Durkin,* 330 Ill. 394,) or in his dwelling (*People* v. *Dale,* 355 Ill. 330; *People* v. *Sullivan,* 345 Ill. 87.) In *People* v. *Geary,* 297 Ill. 608, the evidence was held admissible to counter a defense of insanity, but here, too, the circumstances indicated that the weapons were found in rooms occupied by defendants and under their control. In *People* v. *Doody,* 343 Ill. 194, where the gun was found in an apartment in which the defendant rented a room, the evidence was held inadmissible.

We have found no case upholding the admission into evidence of weapons not proved to be in the possession or under the control of the defendant. Here, when the de-

fendant was arrested some six months after the murder of John Sondaj, he was driving a car which he did not own, but which belonged to his father-in-law, and the shotguns and shells in question were found in the trunk of that car. This was the car used in the holdup on April 28, but there was no showing as to access to the car by the defendant, or as to its use by him on any other occasions. The shotguns and ammunition so found should not, in our opinion, have been admitted in evidence.

The court, over defendant's repeated objections, permitted the State's Attorney to cross-examine the defendant concerning People's exhibit 10, certain shells, after the court had ruled on the exhibit. The State, in its brief submitted here, confesses error, contending, however, that it is not worthy of note. The cross-examination of a defendant is generally confined to matters brought out on direct, but the latitude allowed in cross-examining on such appropriate subjects of inquiry rests largely in the discretion of the trial court. (*People v. Provo,* 409 Ill. 63.) On direct examination nothing was said by the defendant concerning ammunition of any kind, nor was People's exhibit 10 mentioned at all. Nothing in the record connects this exhibit in any way with the offense here charged. Moreover, the exhibit was not allowed into evidence by the court.

Here the jury not only had the duty to determine the guilt or innocence of defendant, but also to fix his punishment. The legislature has seen fit by statute (Ill. Rev. Stat. 1951, chap. 38, par. 360,) to clothe juries with a wide discretion in determining the punishment to be suffered by one convicted of murder, varying from death, or imprisonment for his natural life, to a term of not less than fourteen years. This court has held that when one is tried for murder he has a right to stand before a jury unprejudiced by incompetent, irrelevant evidence and appeal to them to spare his life. The rule is universal that the evidence in a

trial must be confined to the question in issue, and the test of admissibility in evidence is the connection of the evidence offered with the offense charged. A man is not to be convicted of a crime merely because he is a bad man generally or has committed other crimes for which he has not been punished. (*Farris* v. *People,* 129 Ill. 521; *People* v. *Lane,* 300 Ill. 422; *People* v. *Meisner,* 311 Ill. 40.) For reasons which we have stated, the admission of shotguns in evidence was improper. Such an array of weapons could only serve to arouse the jury and prejudice the defendant's position. Likewise, the cross-examination relative to the ammunition comprising exhibit 10 was in no way related to the direct, had no connection with the offense charged, and could not be a proper subject of inquiry. Such interrogation could only serve to emphasize this incompetent evidence and further prejudice the jury against defendant, as an indication of dangerous character and inclination. The effect of all of this incompetent evidence was to close the mind of the jury to any consideration of mercy or leniency. The jury had the right and obligation to fix the penalty, and they set it at the extreme limit authorized by statute. Nobody can know what the jury would have done had they the opportunity to fix the punishment upon an acquaintance with only competent and admissible evidence. It was the defendant's right to have his case tried on a submission of only the competent evidence applicable to the crime for which he was tried. A verdict finding him guilty of murder and setting death as his punishment cannot be sustained even if the competent evidence was so complete that without regard to the incompetent evidence there could be no other verdict than guilty, where there is any incompetent evidence having a tendency to influence the jury in fixing the degree of punishment. (*Farris* v. *People,* 129 Ill. 521; *People* v. *Meisner,* 311 Ill. 40; *People* v. *Heffernan,* 312 Ill. 66; *People* v. *Cassler,* 332 Ill. 207; *People* v. *Polenik,* 407 Ill. 337.) While this court does not intend to indicate

in any manner that defendant is guilty or innocent of the crime charged, it is our opinion that for the foregoing reasons defendant is entitled to a reversal and remandment.

The defendant makes numerous other assignments of error. However, inasmuch as a reversal is ordered for the improper admission of evidence, it is unnecessary for the court to discuss the other errors assigned. Accordingly, the judgment of the criminal court of Cook County is reversed, and the cause remanded for new trial.

*Reversed and remanded.*