THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STUART COLE, a/k/a STUART KOL, Defendant-Appellant.

(No. 11111; ▮)

Fourth District—June 12, 1975.

*Rehearing denied July 11, 1975.*

TRAPP, P. J., specially concurring.

John F. McNichols and J. Daniel Stewart, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz and Edward N. Morris, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SCHOLZ delivered the opinion of the court:

Upon an original appeal in this case, this court reversed and remanded this case for a new trial. (*People v. Cole*, 132 Ill.App.2d 1041, 271 N.E.2d 385.) The Illinois Supreme Court granted leave to appeal, reversed the judgment of this court, and remanded the case to us for consideration of issues not disposed of on the original appeal. (See *People v. Cole*, 54

Ill.2d 401, 298 N.E.2d 705.) The issues for our consideration now are: (1) Were there irregularities in the jury selection that violated the defendant's constitutional rights; (2) was the defendant's right to cross-examine witnesses and develop a defense improperly restricted; (3) was the defendant's right to cross-examination and confrontation violated by rulings of the trial court; (4) was prejudicial error committed by the trial court in its rulings on the admissibility of evidence because of the failure of the State to establish continuity of possession or chain of custody; and (5) were improper instructions given or proper instructions not given but submitted which resulted in prejudice to the defendant.

Under the mandate of the supreme court, we are without authority to consider the contention now made with reference to the granting of the petition for leave to appeal. Thus, we turn to a consideration of the issues properly before us.

The appellant sets forth numerous irregularities in regard to the jury selection. There is no showing that any of these irregularities resulted in prejudice to the appellant.

■■ In *People v. Petruso*, 35 Ill.2d 578, 221 N.E.2d 276, the supreme court in reviewing this question, said:

"The parties are agreed that the provisions of the Jury Commissioners Act have been held to be directory—not mandatory, so far as they relate to the selection of grand jurors, (citation) and the concluding section of the act itself provides that no objection shall be allowed because of any failure to comply with the act or rules promulgated pursuant thereto, 'unless the party urging the same shall show to the court that actual and substantial injustice has resulted or will result to him, because of the error or defect charged.' (Ill. Rev. Stat. 1963, ch. 78, par. 35.) In *People v. Mack*, 367 Ill. 481, 488, 11 N.E.2d 965, 969, however, this court held that: 'The rule that mere irregularities in the selection of a jury will not constitute reversible error is applicable only where there has been an attempt to follow the law and there has been some irregularity in doing so.', and that: 'When the substantial parts of provisions for the selection of jurors are violated such violations are those of subtance and not merely of form amounting only to irregularities.'" 35 Ill.2d 578, 581, 221 N.E.2d 276, 278.

■■ There is nothing in the record that indicates that the rules adopted by the circuit provided for period jury lists. Absent such a rule, there is no foundation of substance that there have been irregularities.

■■ The third question involves the cross-examination of the witness, Pickett, and the direct examination of the witness, Siragusa. Defense counsel attempted to elicit as responses from Pickett information which

was completely unrelated to the direct testimony of that witness. "The scope of cross-examination is a matter resting within the sound discretion of the trial court, and its ruling will not be disturbed in the absence of any showing of abuse of discretion." *People ex rel. Walker v. Pate,* 53 Ill.2d 485, 502, 292 N.E.2d 387, 397.

In regard to the direct evidence of Mr. Siragusa, an evidentiary hearing was held in chambers outside the presence of the jury. That examination determined no other evidence to be offered by the defense except the testimony of Mr. Siragusa. This evidence would have required the jury to speculate or conject and was clearly irrelevant. The trial judge properly ruled in regard to the direct evidence. In regard to the evidence on cross-examination, we find no clear abuse of discretion.

■■ The fourth issue presents greater difficulty in resolution and the briefs submitted are not particularly helpful. In *People v. Carpenter,* 28 Ill.2d 116, 190 N.E.2d 738, the supreme court in an opinion by Mr. Justice Underwood, makes an extensive examination of the hearsay rule and says:

> "The only basis assigned by counsel in his objection to this testimony on the trial was that the conversation occurred 'outside the presence of defendant'. Seemingly, this type of objection, frequently appearing in the trial records before this court, arises from a misconception of the rules of evidence, and a belief that any statement or conversation occurring in the absence of the defendant is inadmissible. Such is not the law.
>
> While we are not clear as to the origin of this notion, it apparently is connected in some way with the hearsay rule. An examination of the basis for this rule will clarify the situation. 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted herein, and thus resting for its value upon the credibility of the out-of-court asserter.' (McCormick, Law of Evidence, sec. 225; see also, Cleary, Handbook of Illinois Evidence, sec. 31.1 *et seq.*) The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered. While the administration of an oath and the right of confrontation are also spoken of as necessary elements, the essential feature, without which testimonial offerings must be rejected, is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the act asserted. (Wigmore on Evidence, 3rd ed. sec. 1361, *et seq.; People v. Smuk,* 12 Ill.2d 356.) If this re-

quirement is met, with the exception of instances such as those where the silence of the defendant is claimed to constitute an implied admission, the presence or absence of the defendant is immaterial." 28 Ill.2d 116, 120-21, 190 N.E.2d 738, 741.

In the instant case, if the testimony of Hurrelbrink and his daughter was offered to merely prove that the statement was made, it is not hearsay. If, however, it was offered to prove that Hornstein intended to go to the block house or did in fact go there, it was hearsay and in order to be admissible must come within one of the exceptions to the hearsay rule.

The fact that the statement was made has no relevancy nor probative value. Their testimony was offered to prove the truth of the matter asserted and for no other reason.

It is suggested that this testimony was admissible as an exception to the hearsay rule on the basis of "res gestae." In *People v. Poland,* 22 Ill.2d 175, 180, 174 N.E.2d 804, 806, the supreme court laid this term to rest by stating:

> "We see no useful purpose to be served in dealing with the problem by using the term 'res gestae.' That amorphous concept has been applied indiscriminately to a multitude of situations, some of which contain no element of hearsay at all, while others involve true exceptions to the hearsay rule. As applied to the situation involved here, we think that the term 'res gestae' not only fails to contribute to an understanding of the problem but may actually inhibit any reasonable analysis."

We must then examine the recognized exceptions to the hearsay rule. There are only two applicable—the first of which is characterized as "spontaneous declarations" or "excited utterances" and the second, which is referred to as "statement of intention."

The testimony objected to herein could not, through the definitions of *Poland,* be characterized as "spontaneous declarations" or "excited utterances."

In *Poland,* the supreme court explored this exception and quoted from the Supreme Court of California in defining it by stating:

> "'When a declaration is made under the immediate influence of the occurrence to which it relates and so near in time as to negative any probability of fabrication, said declaration is admissible.'"

The court went on to say:

> "Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) ab-

sence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." 22 Ill.2d 175, 181, 174 N.E.2d 804, 807.

Obviously this exception to the hearsay rule does not apply.

Another exception to the rule is that of declaration of mental state or statement of intention. This is developed and is called the "Hillmon Rule" from *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 36 L.Ed. 706, 12 S.Ct. 909, and is predicated on the proposition that one does not speak of intent to do an act unless it is on his mind and his thus established state of mind is a circumstance which renders more probable his doing of the particular act declared.

We find no applicable cases in Illinois. In Connecticut in their Supreme Court of Errors, in *State v. Perelli* (1939), 125 Conn. 321, 5 A.2d 705, the court made an extensive examination of statements of intention and, quoting from another Connecticut case said:

" 'A declaration indicating a present intention to do a particular act in the immediate future, made in apparent good faith and not for self-serving purposes, is admissible to prove that the act was in fact performed. It is admissible, not as a part of the *res gestae*, but as a fact relevant to a fact in issue.' This is in accordance with the more modern and better reasoned doctrine. [Citations.] The rule itself is more important than the theory on which it is founded. [Citations.] The underlying, essential characteristic of all the numerous cases admitting such evidence [citation] is that the statement must refer to the intention, design or state of mind of the declarant." 125 Conn. 321, 325, 5 A.2d 705, 707.

In all exceptions to the rule against the admission of hearsay evidence, something is being provided as a substitute for the truth seeking tests. As stated in *Carpenter*:

"The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered." 28 Ill.2d 116, 121, 190 N.E.2d 738, 741.

We find no basis for establishing in a criminal case "the declaration of mental state" or "a statement of intention" as an exception to the hearsay rule in derogation of the defendant's rights of confrontation and cross-examination as assured by the constitution.

■■ The statements by the Hurrelbrinks were hearsay, do not come under one of the exceptions to the hearsay rule, and therefore were inadmissible, but their admission does not result in reversal of this cause for the reasons hereinafter stated.

An analysis of the questions raised on the objections to certain items

of evidence introduced in the face of a contention that the continuity of possession or chain of custody was not established, requires a brief statement of fact.

The appellant objects to the admission of certain exhibits, namely, five cans of lye, a small metal cap and five .45-caliber bullets. He also objects to all items received in evidence from the El Camino truck.

The five cans of lye were not received into evidence. They were offered. Objections were made. The objections were sustained and the cans of lye were not admitted. There were over 130 exhibits, some of which included more than one item. There is nothing in the record that indicates the five cans of lye were singled out, unduly exposed to the jury nor that their presence before the jury was unduly prejudicial. In the absence of a showing of prejudice and on the basis that the cans of lye were not admitted into evidence, no possible error could occur.

All items to which objection is made are items which we can call real evidence—an item which is relevant to the controversy. In the case of real evidence, the object or objects introduced must be relevant, authenticated and the evidence must establish that there is no change in condition.

> "It will be readily apparent that when real evidence is offered an adequate foundation for admission will require testimony first that the object offered is *the* object which was involved in the incident, and further that the condition of the object is substantially unchanged. If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the 'chain of custody' of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." McCormick's Handbook of the Law of Evidence § 212, at 527-28 (Cleary 2d ed. 1972).

This statement is consistent with the law in Illinois. (See *People v. Pittman*, 28 Ill.2d 100, 190 N.E.2d 802; *People v. Tribbett*, 41 Ill.2d 267, 242 N.E.2d 249; *People v. Anthony*, 28 Ill.2d 65, 190 N.E.2d 837; *People*

*v. Norman*, 24 Ill.2d 403, 182 N.E.2d 188; *People v. Smith*, 413 Ill. 218, 108 N.E.2d 596.) It is obvious that an item which we call real evidence does not in fact become evidence at all until the investigation focuses on it and it becomes apparent that it should be considered as possible evidence in a particular case. Then, the obligation to preserve such an item against the possibility of substitution, alteration or tampering accrues and the chain of custody or possession begins. See *People v. Harper*, 26 Ill.2d 85, 185 N.E.2d 865; *Norman*.

■■ An examination of the record in this cause indicates that the exhibits in question were relevant in the controversy, had a proper foundation laid for their admission and their condition was neither changed nor altered. The fact that the El Camino truck was not recovered immediately after the crime and that the investigation did not focus immediately on it and therefore the protective techniques were not employed until some time had passed goes to the weight or the credibility of the evidence in contrast to its admissibility.

The defendant further objects to the giving of People's Instruction No. 8, 11 and 14 and the denial of the Defendant's Instructions Nos. 59 through 67 and 68.

■■ A basic premise of our system of justice, too well known for citation, is that a jury is obligated to follow the instructions *in toto* and not to consider them singly or to single out certain instructions and disregard others. It is incumbent upon the reviewing court to follow the same fundamental rudiments in considering a case on review and particularly in considering objections made to the specific instructions.

The record discloses that this basic premise was followed by the trial judge conscientiously, patiently and courteously in the face of a long and difficult trial and numerous and lengthy instructions. Considered "as a whole," the instructions properly and adequately state the law applicable to this case.

This case was tried and the instructions prepared and given prior to the availability of Illinois Pattern Jury Instructions. Viewed in light of IPI—Criminal, the instructions given in this cause were in some instances excessive in length, confusing and incomplete, particularly in that no specific instruction as to the "issues" in the cause was given. While IPI Instructions are "much to be preferred," their unavailability at the time of trial of this cause, in addition to a consideration of all of the instructions, does not warrant reversal in this cause. See *People v. Knox*, 116 Ill.App.2d 427, 252 N.E.2d 549.

In the instant case, the court gave People's Instruction No. 8, which states: "Motive is that which prompts a person to act. The State is not

required to prove the motive for the commission of the crime charged," and the Defendant's Instruction No. 69, which states: "The Court instructs the jury that although the State is not required to prove a motive to convict one· accused of murder, nevertheless, it is still a circumstance in determining the guilt of the defendant, where the evidence is entirely circumstantial."

The defendant objects on the basis that People's Instruction No. 8 does not state the law in Illinois and Defendant's Instruction No. 69 does.

The case of *People v. Hobbs*, 35 Ill.2d 263, 220 N.E.2d 469, is dispositive of this question. The court stated:

> "Where a deliberate criminal act is proved the State is not required to prove a motive for it, as motive is not an essential element of the crime of murder. [Citation.] And an instruction that is calculated to mislead the jury to understand that the law requires evidence of motive is properly refused. [Citation.] Defendant cites cases from other jurisdictions holding that if an instruction is given that motive is not essential to be proved, the converse of such proposition must likewise be given, that failure to prove motive is a circumstance to be considered in defendant's favor. However, these cases and others we have examined appear to involve circumstantial evidence cases or cases where there is some doubt as to who committed the offense. It can be readily seen in such cases where failure to prove motive might have some bearing upon the guilt or innocence of the accused." 35 Ill.2d, 263, 269, 220 N.E.2d 469, 472.

In the instant case, the evidence was circumstantial, the court correctly stated the law, and in so doing, complied with *Hobbs* in instructing the jury.

The defendant objects to People's Instruction No. 14 on the basis that it omits in the instruction that portion of IPI Instruction 3.02:

> "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

Again, the jury was instructed prior to the availability of Illinois Pattern Jury Instructions in criminal cases, and we must consider the instructions as a whole. The court gave Defendant's Instruction No. 8, which stated:

> "The Court further instructs the jury that if you can reconcile the evidence in this case upon any other reasonable theory or hypothesis than that of this defendant's guilt, it is your duty to do so and to find the defendant not guilty."

People's Instruction No. 14 and Defendant's Instruction No. 8, when considered together, correctly state the law in the case in which all evidence is circumstantial.

The defendant also asserts that Defendant's Instruction No. 68 should have been given. It is substantially the same as People's Instruction No. 14 and Defendant's Instruction No. 8, considered together, both of which were given, but comparison of Defendant's Instruction No. 68 with the combination of People's Instruction No. 14 and Defendant's Instruction No. 8 indicates that the combination of the two instructions correctly and adequately sets forth the law and Defendant's Instruction No. 68 does not.

The defendant objects to People's Instruction No. 11, which he contends does not correctly and adequately state the law applicable and further asserts that Defendant's Instructions Nos. 59 through 67 should have been given.

People's Instruction No. 11 states:

> "The Court instructs the jury that in the crime of murder, intent or knowledge is a material element of the crime and must be proved beyond a reasonable doubt. The Court further instructs the jury, as a matter of law, that if you believe from the evidence, beyond a reasonable doubt, that the defendant committed the crime as alleged in the indictment, and that the defendant acted with knowledge or intent, the knowledge or intent requisite to make out the case shall be proved."

This instruction must be considered in conjunction with People's Instruction No. 17, which states:

> "The Court instructs the jury, in the language of the statute, that a person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death, he either intends to kill or to do great bodily harm to that individual, or knows that such acts will cause death to the individual, or he knows that such acts create a strong probability of death or great bodily harm to that individual."

In *People v. Benson*, 19 Ill.2d 50, 58, 166 N.E.2d 80, 84, the court stated:

> "When one is charged with murder the elements which must be established are proof of death and proof of a criminal agency causing death, both of which must be established by the evidence beyond a reasonable doubt. [Citation.]"

As stated in *Knox*:

> "It is true that the determination of questions of law is the province of the court, and that instructions, which leave to the jury the determination of what are the material issues in a criminal case,

are erroneous. [Citations.] However, it is for the jury to determine facts of the case, and where the instructions, as a whole, inform the jury of the facts which are essential to the proof of the commission of a specific crime, any error in giving an instruction * * * will not be considered so prejudicial as to warrant a reversal." 116 Ill.App.2d 427, 434, 252 N.E.2d 549, 553-54.

■■ In considering the objections to instructions, the supreme court's decision in *People v. Bernette*, 30 Ill.2d 359, 197 N.E.2d 436, is particularly appropriate. In that case the court said:

"[A] conviction may be sustained upon circumstantial evidence as well as direct evidence, [Citation] it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. [Citations.] The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt. [Citations.] We do not see how the jury here could have reached any other conclusion than it did. * * *

* * * Neither circumstance, when laid beside the other evidence in the case, gives rise to a hypothesis of innocence." 30 Ill.2d 359, 367-368, 197 N.E.2d 436, 441.

Two decisions of our supreme court that are apropos in regard to instructions and the inadmissible evidence attendant to the Hurrelbrink testimony are the cases of *People v. Truelock*, 35 Ill.2d 189, 220 N.E.2d 187, and *People v. Ward*, 32 Ill.2d 253, 204 N.E.2d 741.

In *Truelock*, the supreme court said:

"[W]e do not think that the error in this case requires reversal. 'Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' [Citation.]" 35 Ill.2d 189, 192, 220 N.E.2d 187, 190.

The language of the supreme court in *Ward* is more extensive, and therefore its expansion herein supplies authority for our position. The court said:

"He complains generally that other incompetent and inflammatory evidence was admitted, that several given instructions are erroneous, and that the whole set is insufficient to 'define the various issues.' None of the evidence complained of is specified, nor is

any one of the instructions objected to set forth in the brief. We have nevertheless examined both the evidence and the instructions and find nothing therein that could reasonably have affected the result of the trial. A reading of the evidence does not leave the slightest doubt of guilt, and the trial, which consumed nine days, was conducted in a fair and impartial manner. Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty. [Citation.]" 32 Ill.2d 253, 256, 204 N.E.2d 741, 743.

In *Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824, the Supreme Court of the United States said:

"[T]hat before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. 18, 24, 17 L.Ed.2d 705, 710-11.

In *People v. Brown*, 51 Ill.2d 271, 273, 281 N.E.2d 682, 683, our supreme court said:

"Constitutional error can be harmless when it is established 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [Citation.]"

Any error occurring in the trial of the cause considered under this opinion was harmless error beyond a reasonable doubt. The testimony of the Hurrelbrinks was merely cumulative and objective consideration of the evidence clearly proves the defendant's guilt beyond a reasonable doubt without reference to the Hurrelbrink testimony.

The instructions, as given, while not models of perfection, adequately instructed the jury. Such errors, if any, did not warrant reversal.

There was no reasonable theory or hypothesis which would give rise to a finding of the defendant's innocence. Evidence of the defendant's guilt in this case is so clear and convincing that the jury could not reasonably have found him not guilty.

Judgment affirmed.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, specially concurring:

While concurring in the affirmance, I cannot agree with the conclusion that the testimony of Hurrelbrink regarding decedent's stated intention to go to the "blockhouse" was inadmissible hearsay.

Notwithstanding the statement in the opinion, such testimony was

held to be properly admitted in *People v. Reddock*, 13 Ill.App.3d 296, 300 N.E.2d 31, which discusses such statements of intention as an exception to the hearsay rule in the light of the unavailability of the declarant and the reasonable probability of trustworthiness of such statement where there was no apparent reason for fabrication by declarant. See also the cases collected in Annot., 113 A.L.R. 268 (1938).

Again, such testimony would appear to be admissible under Rule 803(3) of the Federal Rules of Evidence, effective July 1, 1975.