THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRED GRABBE, Defendant-Appellant.

Fourth District   No. 4—85—0660

Opinion filed September 15, 1986.—Modified on denial of rehearing November 17, 1986.

Frederick F. Cohn, of Chicago, Larry B. Jones, of Paris, and Max Cohen, of Merrillville, Indiana, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On November 8, 1984, defendant, Fred Grabbe, was charged in the circuit court of Clark County with the July 24, 1981, murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)) of his wife, Charlotte Grabbe, who had disappeared. He was subsequently charged with attempted subornation of perjury (Ill. Rev. Stat. 1981, ch. 38, par. 32—3). After a trial by jury, he was convicted of both offenses on June 24, 1985. On September 11, 1985, he was sentenced to natural-life imprisonment for murder and 120 days' imprisonment for the attempt offense. He has appealed. We reverse and remand for a new trial as to both offenses.

Defendant makes numerous claims of error. We deem it necessary to discuss in detail only his contentions that the evidence was insufficient to support the murder conviction and those which require a new trial. The question of the sufficiency of the evidence is crucial, because, if the evidence did not support a jury determination of his guilt of murder beyond a reasonable doubt, he would be entitled to a reversal without remandment rather than a new trial. The errors which require a new trial are: (1) admission into evidence, over defense objection, of testimony of statements made by defendant that

he had committed prior murders; and (2) the refusal to instruct the jury concerning accomplice testimony. Other questioned rulings will be discussed only to the extent necessary to give guidance in regard to retrial.

The evidence was undisputed that the alleged decedent, Charlotte Grabbe, and the defendant, her husband, had lived together on a farm near Marshall in Clark County and that she disappeared on July 24, 1981. Except for testimony of one witness who purported to have seen her from a distance in Terre Haute, Indiana, and a witness who purported to have recognized her voice over a telephone, there was no other evidence of her subsequent existence. Most of the evidence that defendant killed the decedent came from the testimony of Vicki McCalister, a young woman with whom defendant had been keeping company. One other witness testified to a statement made by defendant which could have been interpreted to constitute admission of elements of the offense. The rest of the evidence relied upon in support of the conviction was circumstantial.

McCalister testified to having met the defendant in her mother's tavern some weeks before July 1981. She admitted that she had "dated" defendant and had sexual intercourse with him prior to the disappearance of Charlotte. The evidence indicated that defendant and his wife were having marital problems and dissolution proceedings were in progress. McCalister testified that defendant had indicated a wish to divorce the decedent. McCalister also described a fight that occurred between defendant and decedent at some farm buildings on land owned by defendant and called "Pickens Place" on July 7, 1981. McCalister testified that she spent the day of July 24, 1981, with defendant at Pickens Place.

McCalister testified to the following chain of events which occurred on July 24, 1981. Several times during the afternoon, defendant left for the stated reason of finding where his wife was working in nearby fields so that he could talk to her. Defendant and McCalister then went to a tool shed near a field where he had found Charlotte to be plowing. He told McCalister to stay inside the shed so that his wife would not know she was there. Defendant's truck had been backed into the shed. While defendant was attempting to load a trash barrel on the truck to be taken to McCalister's trailer for her use, he had what appeared to be an epileptic seizure but soon recovered. She had seen this happen to him before. As defendant regained control of himself, they could hear the decedent's tractor getting closer. McCalister heard the tractor pull up to the shed and enter it, and the motor turned off. She heard the decedent and defendant ar-

guing and then heard something fall. She then saw defendant sitting on the decedent and choking her. While choking her, defendant loosened his grasp on her throat several times and then tightened it until she went limp. During this time, defendant stated to McCalister that he "bet" his wife would die with her eyes open while he also told his wife that he "bet" she was now sorry she had given him so much trouble.

McCalister then gave the following explanation of how disposal was made of the victim's body. Defendant immediately put the body in a barrel on his pickup truck and covered it with used inner tubes. At defendant's direction, she drove the victim's automobile to Terre Haute while he was driving the truck. They left the victim's vehicle in Terre Haute. They then eventually returned together to Clark County where they took the body to a secluded place near a river. In the meantime, defendant had injected the body with grease. The body was then covered with diesel fuel and burned. Some remains were thrown in the river that day while others were burned further the next day and then thrown into the river.

Judy Lark testified for the State. She related that she was present during a conversation between her husband, who was deceased at the time of trial, and defendant concerning the decedent's disappearance. She said that approximately one week after Charlotte's disappearance, her husband asked defendant "[w]hat did you do—grind her up and feed her to the hogs?" She said that defendant responded "[i]f you know what's good for you, you'll keep your mouth shut, or you'll end up the same way." The jury could properly have interpreted defendant's statement as an admission that he had killed the decedent.

Other evidence had some tendency to corroborate McCalister's version of events. Warren Horsley testified that on July 24, 1981, in an area not far from the alleged scene of the killing, he saw defendant driving a pickup truck followed by Charlotte's car driven by a woman whose hair was lighter than that of Charlotte. Dorothy Dixon gave similar testimony, but both testified that they saw nothing in the bed of the truck. Conflicting expert testimony was presented by the State and by the defendant as to whether Charlotte's body could have been destroyed by burning in the manner described by McCalister. Similarly, conflicting expert testimony was presented as to whether inspection of the trees in the alleged burn site indicated that any petroleum fire had taken place there. In regard to both types of evidence, the jury could have found that of the State to be more convincing.

The testimony concerning defendant's disputes with his wife and that concerning his relationship with McCalister had some probative value in indicating that defendant had a motive to kill Charlotte. Some evidence was presented indicating that Charlotte would have been unlikely to have run away. No evidence was presented that she had taken anything of value with her. She had left her purse at home. Her daughter-in-law testified that she was looking forward to a reunion that was to take place on July 26, 1981.

Defendant testified that he had been staying at Pickens Place on the nights of July 23 and 24, 1981, and that on the 24th, he saw Charlotte at the tool shed and they exchanged angry words. He contended that he drove away in his pickup truck, she followed in her car, and he never saw her again. Defendant presented some evidence that corroborated this testimony, but the major thrust of his case was the impeachment of McCalister's testimony for various reasons. The grounds upon which she could be impeached are discussed in more detail in connection with rulings on instructions. The most important impeachment of her testimony arises because she must be treated as an accomplice, and because she would be able to receive a reward upon defendant's conviction. However, neither her status as an accomplice (*People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291) nor her eligibility for a reward (*People v. Williams* (1959), 17 Ill. 2d 193, 161 N.E.2d 295), necessarily requires a determination that the proof failed.

■ Defendant maintains that a conviction based on testimony of a witness who would be paid solely if a conviction is obtained cannot stand. He cites *Williamson v. United States* (5th Cir. 1962), 311 F.2d 441. There, the witnesses involved had a contingent reward contract entered into before the offense for which the accused was on trial occurred. Here, as we will explain, McCalister could have received a reward if defendant were convicted, but the reward was offered only after the offense was committed. *Williamson* is not in point, and no Illinois case is cited in support of defendant's contention.

The testimony of McCalister together with the direct evidence arising from the testimony of Judy Lark and the corroborating circumstantial evidence are of sufficient strength that a rational jury could conclude beyond a reasonable doubt that defendant was guilty of the murder. (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) Defendant is not entitled to an acquittal. However, the great dependence of the State upon the testimony of a witness as impeachable as McCalister requires us to consider with special care some of defendant's claims of error.

■ Over defense objection, McCalister was permitted to testify that during the first night, while Charlotte's body was being burned, defendant told her that he had killed three other people in the past. One killing was stated to have occurred when defendant was about 14 years old. The victim was a person who had killed the defendant's dog. The other killings were apparently stated to have occurred a number of years later, when defendant and another person killed two women because of a dispute over a union matter. In admitting the testimony, the court orally instructed the jury that the evidence was to be considered "solely on the issue of defendant's intent" and not for any other purpose. The court later gave a written instruction which was in the form of Illinois Pattern Jury Instruction, Criminal, No. 3.14 (2d ed. 1981) (IPI Criminal 2d) and stated:

"Evidence has been received that the defendant has been involved in offenses other than those charged in the information. You are not to consider such evidence as any proof that the defendant did commit such other crimes. This evidence has been received solely on the issue of the defendant's *motive*. This evidence may be considered by you for the limited purpose for which it was received." (Emphasis added.) IPI Criminal 2d No. 3.14.

Evidence that an accused has committed other crimes is inadmissible to show a propensity to commit crime. Its probative value in that respect is far outweighed, because it "overpersuades the jury" that the accused is a bad person. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242; see also *Michelson v. United States* (1948), 335 U.S. 469, 93 L. Ed. 168, 69 S. Ct. 213.) The prejudicial effect of this type of evidence is strongest where, as here, the accused is charged with murder, and the collateral offenses are murders. Nevertheless, evidence of other offenses by the accused is admissible to prove a material issue such as the motive for the crime charged, the intent with which the accused acted in committing the offense or the *modus operandi* of the accused. *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

■ Here, the State contended that the evidence of defendant's statement to McCalister that he had committed three other murders was admissible for the limited purpose of explaining why McCalister had failed for several years to come forward to law-enforcement authorities to tell them of how defendant had murdered Charlotte. She testified that she did not do so because she was afraid of defendant, and the State contends that his admissions of the murders helped ex-

plain why she feared him. In orally explaining to the jury that the evidence was admitted to show "intent" and in instructing the jury in writing that it was intended to show "motive," the court was apparently attempting to explain that the evidence could be considered in regard to McCalister's intent and motive in failing to report the crime. However, the oral instruction did not tell the jury that McCalister's intent was the target of the instruction, and the written instruction specifically referred to defendant's motive.

Defendant's admission of prior murders had no relevance to either his intent or motive in regard to the crime with which he was charged. The evidence as explained and limited by the instructions merely had the purpose of "overpersuading" the jury that defendant was a very bad person. The failure to refer to McCalister's intent in the oral limitation given to the jury was probably inadvertent, regardless, however, substantial error resulted. Because of the suspect nature of the testimony of McCalister, the State's principal witness and the only eyewitness, a new trial is required for this reason alone.

■ The foregoing error was compounded by the court's ruling on a difficult question of instruction concerning the impeachability of McCalister. The evidence showed that McCalister had been granted transactional immunity in exchange for her testimony. She had been charged by information with the murder, but the charge was withdrawn. The evidence showed that she would receive a $20,000 reward offered by Charlotte's family if defendant were convicted. The defendant also contended that, under the evidence, she was shown to be an accomplice. The defendant requested that the jury be instructed separately as to how all three matters affected her credibility. The court refused each of the instructions but did give the following instruction as to the credibility of witnesses in general:

> "In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case." IPI Criminal 2d No. 1.02.

The general policy in this State in instructing juries in criminal cases is not to comment on particular types of evidence. (IPI Criminal 2d No. 3.00; see also *People v. McClellan* (1978), 62 Ill. App. 3d 590, 378 N.E.2d 1221.) The format of IPI Criminal makes no provision for instructing the jury with specific reference to immunity given the witness or to the possibility that the witness might receive a reward upon conviction of the accused. Defendant calls our atten-

tion to *United States v. Garcia* (5th Cir. 1976), 528 F.2d 580. There, the prosecution's case depended entirely upon the uncorroborated testimony of an accomplice who stood to receive monetary gain from testifying. As here, a general instruction on credibility of witnesses was given, but no instruction keyed upon the specific ways in which the witness was subject to impeachment.

In the days before IPI Criminal, precedent existed for requiring specific instruction which told the jury that a witness testifying for the prosecution had received immunity. (*People v. Lake Temple* (1920), 295 Ill. 463, 129 N.E. 85; *People v. Rees* (1915), 268 Ill. 585, 109 N.E. 473.) However, we interpret the intent of IPI Criminal to leave comment on such obvious factors affecting credibility as leniency and possibility of reward to argument of counsel and to the general coverage of such matters by the general instruction on the credibility of witnesses (IPI Criminal 2d No. 1.02 (2d ed. 1981)). We conclude that the court properly refused instructions on those issues.

█ The question of whether to give an instruction as to the untrustworthiness of accomplice testimony is a different matter. Traditionally, a special instruction on accomplice testimony has been required when an accomplice testifies for the prosecution. (*People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31.) An instruction on that issue is provided for by IPI Criminal 2d No. 3.17. Such an instruction was tendered here by the defendant and refused. It told the jury that the testimony of an accomplice "is subject to suspicion and should be considered by [them] with caution." (IPI Criminal 2d No. 3.17.) We conclude that the refusal to give this instruction was also error.

The State objected to defendant's tendered accomplice instruction on the ground that the evidence did not indicate that McCalister had participated in the preparation for the killing of Charlotte Grabbe or the killing itself. Rather, the State asserted that her participation was after the fact of the killing, and, accordingly, no evidence indicated that she was guilty either as a principal or under the accountability rule of section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c)). The trial court first indicated that it would give the instruction, because McCalister had been charged with the murder. However, it later decided not to give the instruction when it was revealed that the charges against McCalister were brought by information, and no probable cause hearing had ever been held.

██ █ As stated in *Cobb,* the test as to whether the instruction must be given is whether the prosecution witness alleged to be an

accomplice could have been indicted for the offense. (*People v. Cobb* (1983), 97 Ill. 2d 465, 476, 455 N.E.2d 31, 35; see also *People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.) Whether the witness could have been indicted depends, of course, upon whether probable cause exists to believe the witness was guilty of the offense for which the defendant is charged, either as a principal or by accountability. (*People v. Robinson* (1974), 59 Ill. 2d 184, 319 N.E.2d 772.) Probable cause arises from a showing which is less than that necessary for a *prima facie* case. *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.

Although the evidence indicates that any participation in the murder by McCalister was passive in nature and not great, we conclude that probable cause was shown of her guilt by accountability under the provisions of section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c)). That section states that one is accountable for the conduct of another if, before the offense is committed, he or she aids the other with the intent to facilitate the commission of the offense.

McCalister admitted on cross-examination that in a short period of time before July 24, 1981, defendant had twice told her that he intended to kill Charlotte. When questioned as to her reaction to one of the statements, she responded that she considered defendant's threat as being the type of statement that a spouse was likely to make during a marital dispute. As to the other statement, McCalister indicated that her reaction was that defendant's intentions were none of her business. A trier of fact could reasonably conclude from the evidence that McCalister knew defendant intended to kill Charlotte.

McCalister admitted that a few days before July 24, 1981, she called Charlotte at defendant's request, to attempt to persuade her to come to a restaurant in Terre Haute. McCalister testified that she did this hoping to lure Charlotte there so she could talk to defendant, and that this would aid in an attempt at reconciliation. However, McCalister admitted she told Charlotte that the reason she wanted Charlotte to come there was so that she, McCalister, could give Charlotte some information that would be helpful to Charlotte in obtaining a divorce from defendant. In view of the relationship that McCalister had with defendant at that time, a trier of fact could reasonably conclude that McCalister was not attempting to lure Charlotte to Terre Haute in aid of reconciliation, but in aid of defendant's intent to kill Charlotte.

McCalister testified that she was with defendant at Pickens Pace on July 24, 1981. She explained that she drove towards that place in

a pickup truck, but that defendant required that she park the vehicle some distance away so that Charlotte and members of defendant's family would not know of her presence. She also explained that later, when the tractor Charlotte was driving approached the tool shed, defendant had her hide so that Charlotte would not see her. If McCalister hid knowing that defendant intended to kill Charlotte, and did so intending to help him kill Charlotte, she would be guilty of murder by accountability under section 5—2(c) if the fact she remained hidden, did, in fact, facilitate the killing. McCalister clearly admitted to being of aid to defendant in disposing of the body. This conduct would not be part of the offense of murder but the *Cobb* court considered after-the-fact aid given by an alleged accomplice as bearing upon the nature of an alleged accomplice's conduct prior to the offense.

We hold that probable cause existed to charge McCalister with the murder of Charlotte.

■ The State was permitted to introduce into evidence portions of a note, purportedly written by Charlotte a few days before July 24, 1981.. Those portions stated that (1) she and defendant were getting a divorce; (2) she feared for her life; and (3) she was trying to obtain the farm for her son and herself. Evidence of statements of intent have been considered admissible, as an exception to the hearsay rule to show the intent of the declarant. (E. Cleary & M. Graham, Illinois Evidence sec. 803.4 (4th ed. 1984).) The evidence was admitted here to show that Charlotte did not intend to leave this area. However, in *People v. Cole* (1975), 29 Ill. App. 3d 369, 329 N.E.2d 880, a majority of this court, in holding that no reversible error resulted from admitting such evidence, stated that this exception to the hearsay rule was not proper in a criminal case. The indicated reason for that *dictum* was that the evidence violated the defendant's right of confrontation. Other districts of the appellate court have held to the contrary. *People v. Jones* (1980), 84 Ill. App. 3d 896, 406 N.E.2d 112; *People v. Reddock* (1973), 13 Ill. App. 3d 296, 300 N.E.2d 31; see also Fed. R. Evid. 803(3).

Consistent with the decisions of our brethren in other districts and other persuasive authority, we choose to rescind the *dictum* of *Cole* and to follow the special concurrence of Justice Trapp in that case. (*People v. Cole* (1975), 29 Ill. App. 3d 369, 380-81, 329 N.E.2d 880, 889-90 (Trapp, J., specially concurring).) As he pointed out, evidence of such statements are an accepted exception to the hearsay rule and bears a sufficient indicia of reliability to be admissible even against a defendant in a criminal case. (See *Dutton v. Evans* (1970),

400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210.) Defendant's contention that admission of this testimony here violated his right of confrontation is not well taken. On retrial, such testimony should not be refused for that reason. Whether it will otherwise be admissible will be a question for the court to decide upon retrial depending upon the situation at that time.

■■■■ Our brief comments on defendant's other claims of error are as follows. He complains of limitation placed upon the cross-examination of defendant's son, daughter, and daughter-in-law. We conclude that the limits placed upon the cross-examination were well within the discretion of the court in view of the fact that the witnesses did not give highly significant testimony. Defendant's complaints concerning discovery involve information that is now available to the defense. Under the circumstances here, we find no error in the trial court's exclusion of defense testimony concerning epileptic seizures suffered by defendant after July 24, 1981. Whether such evidence is admissible on retrial will depend upon the state of the evidence at that time. Whether an instruction on prior inconsistent statements need be given on retrial will also depend on the state of the record. The question of whether to permit expert testimony in regard to the types of grease guns available is a matter within the sound discretion of the court.

■■■ As we have indicated, we deem the errors described to require a new trial as to both offenses. No question is raised as to the sufficiency of the evidence to support the attempted-subornation-of-perjury conviction, and it was not dependent upon the testimony of McCalister. However, we deem the prejudice from the admission of the evidence of defendant's commission of prior murders to require retrial of that issue as well as the murder charge. Accordingly, we reverse the judgments of convictions entered and the sentences imposed thereon. The cause is remanded to the circuit court of Clark County for a new trial.

Reversed and remanded.

McCULLOUGH, P.J., and MORTHLAND, J., concur.