THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE WACHAL, Defendant-Appellant.

First District (5th Division)   Nos. 85—783, 85—2164 cons.

Opinion filed May 29, 1987.—Rehearing denied June 29, 1987.

PINCHAM, J., specially concurring.

Gwendolyn D. Anderson, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Christopher J. Cummings, and Steven J. Zick, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

In these consolidated cases, defendant Dale Wachal appeals his conviction for involuntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a)), his sentence of five years' imprisonment and a $5,000 fine (cause No. 85-783), and the trial court's denial of his "Petition for a New Trial Based on Newly Discovered Evidence and Additional Grounds" (cause No. 85-2164). He contends (1) he was denied his right to a fair trial because the trial court erroneously admitted evidence of

other crimes, (2) the trial court erroneously admitted numerous photographs and slides pertaining to the other crimes, and (3) his sentence was excessive.

The record discloses that defendant, his girlfriend, Cindy Lou Walker, and her 16-month-old son, Shawn, shared a townhouse located on the grounds of the Glenview Naval Air Station, where defendant, a naval serviceman, was stationed. On December 20, 1983, while defendant and Walker were having dinner, Shawn, who was upstairs in his bedroom, began to cry. Defendant went upstairs, laid the child down in his playpen, and gave him a bottle which he found lying on the floor. He then went downstairs and told Walker what he had done. Walker told defendant that the bottle he had given Shawn was "no good." Defendant then prepared another bottle and took it upstairs to Shawn. While he was in the room, he noticed that the playpen was "broken." After removing Shawn from the playpen, defendant began making repairs. While doing so, Shawn approached him, crying. Defendant then "swept the back part of his arm and fist to the right" and hit Shawn "somewhere between his chest and stomach area." Defendant "believed" Shawn hit his head on the bedroom door approximately six feet away. On hearing Shawn fall to the floor, defendant glanced at Shawn, surmised he was not hurt, and then returned to repairing the playpen.

Shortly thereafter, defendant heard Shawn gasping for breath. Defendant picked him up and began to slap him on his back in order to help him breathe. Shawn began gasping less frequently, began to go limp, and apparently stopped breathing. Defendant then carried him downstairs and took Shawn, along with Walker, to a clinic approximately five blocks away, where he received emergency medical treatment. Shawn was subsequently taken by ambulance to Glenbrook Hospital in Glenview and then transferred to Evanston Hospital for continued treatment. He remained comatose and, on January 13, 1984, he died, never having regained consciousness.

Prior to Shawn's death, defendant was arrested and charged with aggravated battery to a child, aggravated battery, and battery. After Shawn's death, defendant was indicted for murder and endangering the life of a child.[1]

At trial, witnesses testified to observing 27 bruises and 4 bite marks on Shawn's body. Numerous photographs and slides were admitted to show the nature, location, and extent of the bruises. The State also introduced into evidence several statements made by defend-

---

[1]The offense of endangering the life of a child appears to never have been before the jury.

ant to the police and hospital staff in which defendant stated he had struck Shawn several times in the past. Defendant testified that his past acts towards Shawn were nothing more than spankings as a means to discipline him, that he bit Shawn on the arm on one occasion because he was angry with him, and that Shawn's death, as a result of his last act, was accidental. Based on the evidence, defendant was found guilty of involuntary manslaughter, sentenced to five years' imprisonment, and fined $5,000. Defendant's subsequent post-trial motions for a new trial, judgment notwithstanding the verdict, and motion in arrest of judgment were denied.

On appeal, defendant first argues that he was denied a fair trial because the trial court improperly permitted the State to introduce evidence of other crimes, *i.e.*, the admittedly prior abuse of Shawn indicated by the numerous bruises and four bite marks appearing on his body. The State argues that this evidence was properly admissible for the purpose of establishing defendant's intent or mental state, at the time of the fatal blow to Shawn, based upon a pattern of abuse.

Although evidence of other crimes is not admissible to show an accused's propensity to commit a crime (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238), such evidence is admissible if it is relevant for other purposes, such as to show intent, identity, motive, *modus operandi*, or absence of mistake (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200). In fact, the range of purposes for which other crimes evidence may be admitted is almost infinite. (*People v. Triplett* (1981), 99 Ill. App. 3d 1077, 425 N.E.2d 1236.) Evidence of other crimes cannot be admitted, however, unless it is first shown that a crime actually took place and that the accused committed it or participated in its commission. (*People v. Miller* (1977), 55 Ill. App. 3d 421, 370 N.E.2d 1155.) Additionally, once such a foundation is established, a trial court must determine whether the probative value of the evidence is outweighed by its prejudicial effect. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

In the instant case, as mentioned above, the State presented evidence of the prior physical abuse suffered by Shawn for the purpose of establishing defendant's intent or mental state. Although defendant concedes that Shawn was a victim of child abuse, he argues that admission of the evidence of the prior abuse was erroneous because the State failed to meet its burden of proving, by more than mere suspicion, that he committed the abuse. We disagree. By his own admission, defendant stated he had hit Shawn on a number of occasions:

"[In April or May 1983] I slapped him [with an open hand] in

the face one time just after I met Cindy. I know that in my mind I thought I was disciplining him, but I realize that I hit him too hard, um, I believe. \*\*\* [T]here was a red mark at the time \*\*\*.

I have disciplined Shawn in the past by hitting him on the butt. Um, I do recall a *few times* when he would be laying in front of a VCR I lent Cindy \*\*\* *when I believe I struck him too hard.* I don't believe he was hurt other than externally or other than very very minor hurt when I did hit him.

Last Friday [December 16, 1983,] I hit him, he was turning up the volume of the TV when I came downstairs, and he didn't see me coming. He didn't see that I was going to hit him. And I hit him on the butt and he went forward and kind of glanced off the table and the TV and hit his face on the corner of the table and then fell to the ground in front of it. \*\*\* [Later,] I explained to [Cindy] that I had hit Shawn and he had fallen and that I would appreciate her coming home soon, that way she could look at him and make sure he was all right. \*\*\* I didn't undress him so I didn't notice any marks on his body, but on his face, he had a red mark that looked like there was a—probably a little bit bigger than a quarter or maybe a half dollar and inside of it, there was like a prick mark where it might have just barely broke the skin and bled just a fraction and then quit. Just enough to make it look bad. [In the days after] that mark turned into a bruise.

I did bite [Shawn] once. I believe it was either Saturday the 17th or Sunday the 18th [of December, 1983]. \*\*\* I had taken Shawn away from his mother to take him up and put him in his crib, and he was crying—borderline on screaming, \*\*\* and we were walking up the stairs and *I guess my anger got the best of me again,* and I bit him on the arm that he had in front of my face because I was holding him with both hands. \*\*\* There were teeth marks and it was red and I noticed later in the evening [that they turned into a bruise].

[On December 20, 1983,] I just used the wrong means [hitting Shawn] *due to my anger.* I thought I knew I done wrong. *I knew I hit him way too hard.* \*\*\* *I should've pushed him out of the way and I hit him instead. And to me, that was using far excessive force for that."* (Emphasis added.)

With respect to the last incident, defendant also stated that the blow, although it would not have knocked over a grown man, was forceful enough that the man "would know" defendant had hit him.

While it is true, as defendant contends, that the State did not

prove he was responsible for all 27 bruises and 3 of the bite marks, it is apparent that he inflicted one bite mark and some of the bruises prior to and within five days of Shawn's death, especially in light of the apparent force of the blows which caused Shawn to "glance off a table and TV and hit a corner of the table and fall to the floor," and, on another occasion, to hit his head against a door approximately six feet away. (See *People v. Milner* (1984), 123 Ill. App. 3d 656, 463 N.E.2d 148 (proof of other crimes need not be established beyond a reasonable doubt).) Since defendant was charged with murder and the State had the burden of proving that he knew that his acts created a strong probability of death or great bodily harm to Shawn (see Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2); *People v. Jones* (1986), 140 Ill. App. 3d 660, 488 N.E.2d 1363), or that defendant was guilty of the lesser included offense of involuntary manslaughter in acting recklessly by consciously disregarding a substantial and unjustifiable risk that circumstances existed which would result in death or great bodily harm to Shawn (see Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a); *People v. Singleton* (1976), 41 Ill. App. 3d 665, 354 N.E.2d 464), there is no question that evidence of defendant's commission of these acts was relevant and admissible to support the State's purpose to establish defendant's intent or mental state at the time he struck Shawn the final time.

In light of the above, we briefly note that defendant's reliance on *United States v. Brown* (5th Cir. 1979), 608 F.2d 551, is, therefore, misplaced. In *Brown,* no evidence was presented that injuries to a child, which occurred approximately two weeks before another incident for which the defendant was charged with child abuse, resulted from the commission of any offense or that the defendant was responsible for same. Here, defendant concedes Shawn was abused and he admitted that some of the bruises and one bite mark within five days of Shawn's death were attributable to him.

On the other hand, we believe *People v. Drumheller* (1973), 15 Ill. App. 3d 418, 304 N.E.2d 455, is applicable to the instant case. In *Drumheller,* the defendant admitted to striking a child on three previous occasions and claimed that he only intended to discipline the youngster, not hurt him. The fourth time the defendant hit the child with his closed fist in the stomach resulted in the death of the child. The child's mother and babysitter testified to observing bruises on the child *after* each incident, and four other witnesses testified to having seen bruises on the child *after* some of the occasions; it appears from the court's opinion that none of the witnesses actually *saw* the defendant hit the child. The *Drumheller* court found that there was sufficient evidence from the defendant's own testimony to establish his murder

conviction (*i.e.*, that his admitted actions on the three previous occasions refuted the suggestion that his actions were accidental or reckless) and that the evidence sustained the jury's conclusion as to the required mental state.

Here, defendant's admissions of striking Shawn at various times corresponded with some of the witnesses' observations of bruises on Shawn's body thereafter and prior to his death, even though they did not see defendant inflict the bruises. Defendant admitted hitting Shawn a "few times *** on the butt" after April or May; hitting him "on the butt" on December 16, causing him to go forward "and kind of glance off the table and TV and hit his face on the corner of the table and fall [down]," resulting in a facial bruise which remained in the days following; and biting Shawn on the arm on December 17 or 18, resulting in a mark which turned into a bruise.

Correspondingly, Omara Terrano, Shawn's teacher, noticed Shawn had bruise marks on the left side of his face and a large bump on the right side of his forehead on November 29, 1983. A Department of Children and Family Services representative testified that Shawn had the same bruises on November 30 which had been described by Terrano, that one of his facial bruises was the shape and size of a male hand, and that Shawn also had a small bruise on his "backside." Terrano further testified Shawn had a large crescent-shaped bruise on his stomach between December 5 and 9. Lory Cross, who babysat Shawn, stated that in November she observed a hand-shaped bruise on Shawn's right cheek. Cross also testified that on December 19, three days after defendant hit Shawn, causing him to glance off a table and television and fall to the floor, she observed that Shawn had a bruise on the left side of his head up by the hairline and bruises on his stomach and "in the diaper area," as well as a split lip. In light of the foregoing, we believe it reasonable to conclude that some of these bruises could have been inflicted during the "few times" defendant hit Shawn "on the butt" after April or May and from the 16th to the 20th of December.

■ As previously mentioned above, this evidence was relevant to the critical issue of defendant's intent or mental state at the time he last struck Shawn. We further find that its probative value outweighed the danger of any prejudicial effect in light of defendant's own admissions. Additionally, the trial court specially instructed the jury, pursuant to Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981), that the evidence of other crimes was received solely on the issue of defendant's presence, intent, motive, and design and not to show a propensity on defendant's part toward criminal conduct. Ac-

cordingly, we conclude that the trial court did not improperly allow admission of this evidence.

■■■■ We similarly reject defendant's argument that the numerous photographs and slides admitted were irrelevant, immaterial, and served only to prejudice, inflame, and mislead the jury, thus denying him a fair trial. Whether a photograph of a deceased person should be admitted normally rests within the sound discretion of the trial court. (*People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 408 N.E.2d 1098.) If a photograph has sufficient probative value concerning one or more issues in a homicide investigation, it may be admitted even if gruesome and inflammatory (*People v. Panzer* (1979), 73 Ill. App. 3d 1, 391 N.E.2d 467) where it depicts the amount of force used in the crime or where it tends to corroborate or dispute the testimony of a pathologist or other witnesses (*People v. Jurczak* (1986), 147 Ill. App. 3d 206, 497 N.E.2d 1332). Photographs of a dead body should not be excluded merely because there is extensive oral testimony on the same subject. *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.

■■ Based on these well-settled principles, we cannot conclude that defendant was prejudiced by the admission of the photographs or slides. Both disclosed bruises on Shawn's body and aided the testimony of several medical experts to show that Shawn had been the victim of repetitive physical abuse. We further observe that although over 47 photographs and slides were admitted, 11 of the slides were duplicates of the photographs and were not used again by the State; it appears that the greatest number of the total amount were introduced concerning the bite marks suffered by Shawn; a number of the photographs were introduced to distinguish between possible bruises caused by hospital treatment and those caused prior to his hospitalization; the court concluded that the photographs and slides were not inflammatory or gruesome—the child depicted looked like any child asleep; the jury was told to disregard any hospital apparatus and advised that any equipment in the pictures was not designed to shock or inflame them; the court disallowed admission of a number of photographs and slides which were either duplicates or cumulative; and the court further limited the amount of photographs that could be sent back to the jury. We also briefly note that the fact that the jury found defendant guilty of involuntary manslaughter, rather than murder, indicates that the admission of "numerous" photographs and slides apparently did not create the alleged "overwhelming" prejudice defendant claims.

For the above reasons, we therefore find that the trial court did not abuse its discretion in admitting the photographs and slides into evidence.

■ We also find defendant's last argument, that his five-year sentence was excessive in light of his prior exemplary behavior and rehabilitative potential, without merit. Sentencing is within the sound discretion of the trial court and, absent an abuse of that discretion, its determination will not be disturbed on review. *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.

Here, the record discloses that the trial court thoroughly considered defendant's military record, his lack of prior criminal activity, and his lack of drug abuse or alcoholism. The court also considered the serious nature of the crime and the evidence of defendant's prior "disciplinary" acts toward a 16-month-old child, which the trial court characterized as abuse over a seven-month period, culminating in the child's death. Despite defendant's otherwise good record, we find no reason to substitute our judgment for that of the trial court based upon its weighing of the factors in mitigation and aggravation and the fact that its sentence is within the statutory limits prescribed for involuntary manslaughter, a Class 3 felony (not less than two years and not more than five years) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(6)). Accordingly, we hold the trial court did not abuse its discretion in sentencing defendant.

Finally, we briefly note that cause No. 85-2164, defendant's appeal from the trial court's denial of his "Petition for a New Trial Based on Newly Discovered Evidence and Additional Grounds," which was consolidated with cause No. 85-783, has been abandoned for the present time pursuant to defendant's counsel's statement to this court during oral argument. Accordingly, the order consolidating cause No. 85-2164 with No. 85-783 is vacated, and cause No. 85-2164 is hereby dismissed for want of prosecution.

The State's request for costs for defending this appeal is allowed pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, the State's request for an additional fee of $25 for oral argument is allowed.

For the foregoing reasons, the judgment of the circuit court of Cook County in cause No. 85-783 is affirmed, and the appeal in cause No. 85-2164 is dismissed.

Cause No. 85-783—Affirmed.
Cause No. 85-2164—Dismissed.

LORENZ, J., concurs.

JUSTICE PINCHAM, specially concurring:

Count I of the indictment on which the defendant was tried alleged, "[O]n December 20, 1983 at and within Cook County Dale Wachal committed the offense of murder in that he, without lawful justification intentionally and knowingly beat and killed Shawn Walker with his hands, in violation of Chapter 38, Section 9—1(a)(1) of the Illinois Revised Statutes 1981 ***." Count II alleged that Dale Wachal in Cook County on December 20, 1983, "committed the offense of murder in that he, without lawful justification intentionally and knowingly beat and killed Shawn Walker with his hands" in violation of the aforesaid statute.

Murder is defined in section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1)), as follows:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another ***."

At trial, the prosecutor presented to the jury defendant's 24-minute tape-recorded confession in which the defendant stated that on December 20, 1983, "using the back part of my arm; right arm, the back part of my fist, I *** hit Shawn somewhere between the chest and stomach." The defendant stated that the instant he hit Shawn he knew he had done wrong, that he knew he had hit him too hard and that he should not have hit him. The blow knocked Shawn about six feet away. The defendant believed that Shawn's head hit the door. Shawn gasped for breath. The defendant thought that he had knocked the breath out of him. The defendant picked Shawn up and attempted to revive him. Unable to do so, the defendant drove Shawn and his mother to the clinic.

The defendant further stated in his confession that he struck Shawn in anger and that he was "mad at him because he was trying to do something that I didn't want him to do right then ***. I struck him in anger, I didn't just push him away." Describing the force of the blow, the defendant's confession stated, "I wouldn't say it would knock over a grown man, but he'd know I hit him if I—if I threw that backhand at a grown man, he would know I hit him ***."

The State's evidence established that the blow inflicted upon Shawn by the defendant on December 20, 1983, was the cause of Shawn's death on January 13, 1984.

The State called 15 witnesses during the trial. The voluminous rec-

ord on appeal constitutes four volumes, over 2,000 pages. The greater portion of the State's evidence established Shawn's pre-December 20, 1983, physical injuries, some of which, the evidence established, were committed by the defendant. The evidence failed to establish that Shawn's other pre-December 20, 1983, physical injuries were committed by the defendant. Most of the questions asked of the defendant and his answers during his tape-recorded confession concerned and established the defendant's pre-December 20, 1983, injuries to the minor child.

The State presented pre-December 20, 1983, evidence of 27 bruises and 4 bite marks on Shawn. Over 47 color photographs and slides depicting pre-December 20, 1983, bite marks and color photographs of Shawn's body were shown to the jury. Seven witnesses—doctors, dental experts and nurses—extensively testified to Shawn's pre-December 20, 1983, physical injuries. As stated, the State was unable to and made no effort to establish that all of Shawn's pre-December 20, 1983, injuries were inflicted by the defendant. The record reveals that Shawn's mother was charged with abusing Shawn and that she relied on her fifth amendment privilege against self-incrimination in refusing to testify as a defense witness.

Because of the position I take regarding Shawn's pre-December 20, 1983, physical injuries, it is unnecessary to set forth this evidence in more detail. Although grossly incomplete, it is adequately set forth in the majority opinion.

The defendant did not testify. The jury found the defendant guilty of involuntary manslaughter.

On this appeal the defendant contends that the trial court erred in admitting evidence of the pre-December 20, 1983, physical injuries to Shawn. The majority concludes, "Since defendant was charged with murder and the State had the burden of proving that he knew that his acts created a strong probability of death or great bodily harm to Shawn *** there is no question that evidence of defendant's commission of these acts [the pre-December 20, 1983, physical injuries] was relevant and admissible to support the State's purpose to establish defendant's intent or mental state at the time he struck Shawn the final time." (156 Ill. App. 3d at 336.) I do not agree with the majority's conclusion.

The State's evidence established that the blow the defendant struck on December 20, 1983, was the sole cause of Shawn's death. The State has not contended otherwise. The State has not urged and did not present any evidence to establish that any of Shawn's pre-December 20, 1983, physical injuries were potentially fatal or contributed

to Shawn's death. Rather, the State argues, and the majority concludes, erroneously I submit, Shawn's pre-December 20, 1983, injury evidence "was properly admissible for the purpose of establishing defendant's intent or mental state, at the time of the fatal blow to Shawn, based upon a pattern of abuse." (156 Ill. App. 3d at 334.) Evidence of the defendant's infliction of the pre-December 20, 1983, nonfatal injuries does not establish or create an inference that the defendant intended to fatally injure Shawn when he struck him on December 20, 1983. This pre-December 20, 1983, evidence did not establish the defendant's December 20, 1983, mental state. The defendant's December 20, 1983, mental state was established by his tape-recorded confession wherein he stated that on December 20, 1983, he struck Shawn in anger.

The defendant's pre-December 1983 physical injuries to Shawn did not establish and were not admissible to establish defendant's motive or intent. The evidence of the commission of other crimes by the defendant upon Shawn was grotesque and it was not probative to any issue at trial. The trial court, in my judgment, erred in admitting it. See *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238; *People v. Grabbe* (1986), 148 Ill. App. 3d 678, 499 N.E.2d 499; *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387; *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667; *People v. Miller* (1977), 55 Ill. App. 3d 421, 370 N.E.2d 1155.

The majority's reliance on *People v. Drumheller* (1973), 15 Ill. App. 3d 418, 304 N.E.2d 455, is misplaced. Unlike the voluminous child abuse evidence over an extended period and the extensive pictures and documentary corroborative evidence in the case at bar, in *Drumheller* the evidence established that the defendant spanked the minor child on three occasions in September 1970. The defendant struck the fatal blow on September 25. The defendant testified that he only intended to discipline the youngster, not hurt him. The jury found the defendant guilty of murder. In affirming, the court stated, "There was sufficient evidence from the defendant's own testimony to establish the murder conviction. *** [T]he fact that defendant, on three previous occasions, inflicted injuries upon the child, refutes the suggestion that his actions were accidental or reckless." (15 Ill. App. 3d 418, 421, 304 N.E.2d 455.) In the case at bar, the defendant did not contend, as did Drumheller, that he was disciplining his child or that his actions were accidental or reckless. The defendant's uncontradicted confession established that he was not disciplining Shawn, that he intended to strike Shawn, and that he struck him in anger. Thus, the defendant's pre-December 20,

1983, physical injuries to Shawn were not admissible in the case at bar under *Drumheller*.

The capacious pre-December 20, 1983, physical injury evidence, the teeth marks and dental charts, the numerous color pictures and slides of the bruises and injuries, and the multiple pictures of Shawn when he was dead were highly inflammatory and prejudicial. Apparently this evidence did not convince the jury that the defendant intended to murder Shawn. In spite of its goriness, the jury was not influenced or persuaded by this evidence. The jury did not find the defendant guilty of murder. Instead, the jury found the defendant guilty of involuntary manslaughter.

Involuntary manslaughter is defined in section 9—3(a) (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a)), as follows:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***."

The jury believed the defendant's confession that on December 20, 1983, he struck Shawn, that that blow was the cause of Shawn's death, and that the evidence proved the defendant guilty beyond a reasonable doubt of the offense of involuntary manslaughter. This evidence supports their guilty verdict and should not be disturbed.

Because the pre-December 20, 1983, evidence of injuries to Shawn did not establish that the defendant intended to kill Shawn and failed to influence the jury to return a verdict of guilty of murder, its admission was harmless error. Illinois Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)) provides:

> "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

The guilty verdict in this case must therefore stand.

I agree that the five-year imprisonment sentence was not excessive. Arising out of his totally unjustified anger, the defendant struck and killed a 16-month-old defenseless child who was most deserving of society's care and protection. The defendant urges that the trial court's following remarks in imposing the five-year imprisonment sentence reveal inappropriate considerations:

> "But what rights were given Shawn Walker? When he was first slapped, did anyone tell him he had a right to counsel? When he was shoved, did anybody advise him of the rights to remain silent? When he was bitten, did anybody suggest to him that he had a right to confront the witnesses against him?"

It does not follow from these remarks that the sentence of five years' imprisonment was excessive.

For the foregoing reasons, I concur in the affirmance of the defendant's conviction.