THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LISA VALEN *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—87—1883, 1—87—1884 cons.

Opinion filed May 11, 1989.

Michael J. Pelletier, Martin Carlson, and Mark W. Solock, all of State Appellate Defender's Office, of Chicago, for appellant Lisa Valen.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for other appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

After a joint bench trial Lisa Valen (defendant) and Neal Logue (codefendant) were found guilty on information number 87—CR—405

of possession of more than 30 grams of a controlled substance with the intent to deliver and delivery of more than 30 grams of a controlled substance. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2).) Codefendant was also found guilty on information number 87—CR—406 of delivery of a controlled substance. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2).) Defendant was sentenced to two concurrent terms of six years' imprisonment and codefendant was sentenced to three concurrent terms of six years' imprisonment. Both appeal from their convictions and their appeals have been consolidated.

Defendant contends that she was not proven guilty of the offenses beyond a reasonable doubt because the evidence adduced at trial was insufficient to show that she participated in the delivery or exerted control over the contraband. Codefendant contends that he was not proven guilty beyond a reasonable doubt because there was insufficient evidence that a delivery took place or that the weight of the controlled substance exceeded 30 grams. Codefendant also contends that the trial court erred by finding him guilty of both the delivery and possession charges when his conduct constituted a single offense.

Both defendant and codefendant were charged by information number 87—CR—406 with calculated criminal drug conspiracy and delivery of a controlled substance based on the events occurring on November 24, 1986, and by information 87—CR—405 with calculated criminal drug conspiracy, delivery of more than 30 grams of a controlled substance and possession of more than 30 grams of a controlled substance with intent to deliver based on the events occurring on November 25, 1986. At trial Chicago police officer Curtis Scherr testified that while working in an undercover capacity on November 24, 1986, he contacted Eugene Boerema regarding the possible purchase of one ounce of cocaine.[1] Later that day Scherr met Boerema at Boerema's apartment at 4048 West 63rd Street to make the purchase. It was at this apartment that Scherr first saw defendant and codefendant. Scherr testified that Boerema introduced him to codefendant, who was standing in the doorway to the kitchen. Then Boerema brought a mirror, scales and plastic bag containing a white "brick" of cocaine from a bedroom to the dining room table. There Boerema cut off a portion from the "brick," weighed it on the scales and asked Scherr if it "looked alright." During this time defendant walked around the room and the dining room table while codefendant remained in the kitchen doorway.

---

[1]Eugene Boerema was another codefendant in this case. However, Boerema pleaded guilty to some of the charges and did not participate in this bench trial.

Scherr testified that he paid Boerema the agreed price of $1,400 and that Boerema counted the money. He then passed it to codefendant, who again counted it while he walked into the bedroom. Boerema packaged the ounce of cocaine and Scherr left. Scherr then met with his surveillance team, returned to the police station and processed the contraband he received.

Still later that same day Scherr had several telephone conversations with Boerema and codefendant regarding a possible second purchase. Scherr testified that Boerema told him that he could procure any amount of cocaine Scherr needed. Scherr then made arrangements to purchase 10 ounces of cocaine the following day.

On November 25, 1986, Scherr arrived at Boerema's apartment between noon and 1 p.m. to make the second cocaine purchase. Boerema, defendant and codefendant were present, but he was told that the cocaine was not yet available. Scherr then left the apartment and told Boerema to page him when the contraband was available. During that afternoon Scherr made several telephone calls to Boerema's apartment. The first telephone conversation was with Boerema, who stated that the "produce" was still not available. The second telephone conversation was with codefendant, who confirmed that the "stuff" was not there yet. Codefendant also told Scherr at this time that Boerema was a "nice guy" but "a little soft." Codefendant told Scherr that he (codefendant) was the "main guy" and that Scherr should deal directly with him.

Scherr then had two telephone conversations with defendant. In both conversations defendant told Scherr that Boerema and codefendant were not there. When Scherr expressed concern that the deal was taking too long, she told him to "be patient" and "hang in there" because they would soon bring his purchase. In the second telephone conversation with defendant, Scherr told defendant that his patience was gone, and he was not going to go through with the deal. Within 10 minutes of this telephone conversation Boerema paged Scherr and told him that his merchandise had arrived.

Scherr and his partner, Detective Thomas Keough, then proceeded to the Boerema apartment. It was about 5:30 p.m. on November 25, 1986, when Scherr again entered Boerema's apartment. Both defendant and codefendant were present in the apartment along with Boerema. Defendant stayed in the dining room near Boerema, while codefendant stood near the kitchen doorway. On the dining room table was a scale containing a large chunk or "brick" of cocaine. Boerema again asked Scherr if the weight "looked alright." Scherr agreed and then told Boerema to come outside to get the money from his partner.

Boerema then instructed codefendant to package the cocaine on the scale as he stepped outside with Scherr.

Outside the apartment Boerema entered Scherr's vehicle and met his partner Detective Keough. Keough turned over $12,500 of DEA funds to Boerema. But as Boerema counted the money he was informed that he was under arrest. Boerema was advised of his rights and informed that there was a search warrant for his apartment. Scherr and the entire surveillance team then accompanied Boerema back into the apartment, searched the premises and arrested defendant and codefendant. As Scherr entered the apartment, he observed codefendant sliding a shotgun under the couch. This shotgun was recovered along with a second shotgun found on the kitchen table under codefendant's jacket.

Besides the nearly 10 ounces of cocaine which had been packaged and left on the dining room table for Scherr, the officers found packages of cocaine on top of the refrigerator in the kitchen and in the center bedroom of the three-bedroom apartment where defendant, codefendant and Boerema resided.

Detective Thomas Keough testified that he had been working with Scherr on November 24 and 25, 1986, and corroborated the testimony of Officer Scherr. Stipulations were then entered regarding the chain of custody and chemical analysis of the contraband. It was stipulated that the package purchased by Scherr on November 24, 1986, contained 28.02 grams of a substance containing cocaine. It was also stipulated that the package of cocaine found on the dining room table on November 25, 1986, contained 279.84 grams of a substance containing cocaine and that the packages found on top of the refrigerator and in the center bedroom contained 163.78 grams and 20.08 grams, respectively, of a substance containing cocaine.

After the State rested, both accused moved for directed findings which were denied. Then defendant testified that she resided at 4048 West 63rd Street and Eugene Boerema was her boyfriend. Although defendant admitted that she was aware that several drug transactions had taken place at the apartment, she claimed that she never directly participated in these transactions and did not approve of them. Defendant testified that she had left the room on November 24, 1986, when the drug transaction took place. However, she admitted having two telephone conversations with Scherr on November 25, 1986, and being present during the subsequent drug transaction on that day. She also admitted to being an occasional cocaine user.

Eugene Boerema then testified on defendant's behalf. He admitted his own involvement in the drug transactions but testified that

defendant never took part in or condoned the sale of drugs.

After closing arguments the court found defendant not guilty on information number 87—CR—406, but found codefendant guilty of delivery of a controlled substance. With regard to information number 87—CR—405, the court found both defendant and codefendant guilty of possession of more than 30 grams of a controlled substance with the intent to deliver and delivery of more than 30 grams of a controlled substance.

■■ ■ We first consider the appeal of defendant, who contends that there was insufficient evidence to prove her guilty of the offenses beyond a reasonable doubt under a theory of accountability. The relevant inquiry is whether the evidence, viewed in a light most favorable to the State, would support any rational trier of fact in finding that the essential elements of the crimes had been proven beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) To prove guilt under an accountability theory it must be shown that (1) defendant elicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation took place before or during the commission of the offense; and (3) there was a concurrent, specific intent to promote or facilitate the commission of the offense. *People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544; *People v. Sauer* (1988), 177 Ill. App. 3d 870, 532 N.E.2d 946.

■■ We find that there was sufficient evidence to show that defendant aided or attempted to aid Boerema to knowingly deliver a controlled substance, namely cocaine. It is true that mere presence at the scene of a crime, even with knowledge that the crime is being committed, is not enough to prove participation. (*People v. Schlig*, 120 Ill. App. 3d at 570; *People v. Sauer*, 177 Ill. App. 3d at 876.) However, we believe that the telephone conversations between defendant and Scherr, along with her presence at the time of the sales, support the conclusion that defendant played an active role and shared the common illegal purpose of effecting the sale of the controlled substances. See *People v. Burke* (1985), 136 Ill. App. 3d 593, 601, 483 N.E.2d 674.

■■ We also find sufficient evidence to show that defendant jointly possessed cocaine with the intent to deliver. To support this conviction the State was required to show that defendant had knowledge of the presence of the contraband, that the contraband was in defendant's control or possession and that the amount of contraband exceeded any amount which might be viewed as possessed for personal use. (*People v. Pintos* (1988), 172 Ill. App. 3d 1096, 1101, 527

N.E.2d 312.) Here, relatively large amounts of contraband, over 160 grams, were found in the kitchen, a common area of the premises where defendant resided and exerted control. This gives rise to an inference that defendant knowingly exerted control over the contraband. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361; *People v. Wiley* (1988), 174 Ill. App. 3d 444, 528 N.E.2d 26.) Furthermore, defendant admitted that she was aware of the presence of controlled substances in the home and Boerema's sale of these substances from the premises. Although defendant testified that she did not approve of these transactions and always left the room during them, the evidence at trial showed that she was present during the two transactions with Scherr. The trier of fact has the duty to assess the credibility of the witnesses, and his findings of fact, even when a conflict exists within the evidence, will not be overturned unless the verdict is so unreasonable, improbable or unsatisfactory that a reasonable doubt of the defendant's guilt exists. (*People v. Knight* (1985), 133 Ill. App. 3d 248, 478 N.E.2d 1082; *People v. Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674.) We believe that the entire chain of circumstances leads to a reasonable and moral certainty that defendant was guilty of the crimes (*People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801), and we affirm defendant's convictions.

As an aside we note that we find no inconsistency in the trial court's failure to find defendant guilty of conspiracy. To find defendant guilty of conspiracy there would have to have been a showing of an agreement to commit the offenses with the intent that the offenses be committed, in addition to proof of an act in furtherance of the common design. (*People v. Persinger* (1977), 49 Ill. App. 3d 116, 363 N.E.2d 897.) Therefore, evidence that defendant aided and abetted the offenses involved here, in a manner sufficient to hold her accountable, does not necessitate a finding that defendant entered into an agreement to follow a course of action that would culminate in the commission of the offenses.

We now turn our attention to codefendant's first issue, that he was not proven guilty of delivery of more than 30 grams of a controlled substance because (a) the State failed to prove the element of delivery with respect to the November 25, 1986, transaction and (b) the State failed to prove that the weight of the cocaine that was delivered exceeded 30 grams.

"Delivery" means the actual, constructive, or attempted transfer of a controlled substance from one person to another. (Ill. Rev. Stat. 1985, ch. 56½, par. 1102(h).) In the case at bar, the facts reveal that on November 25, 1986, Officer Scherr arrived at the Boerema apart-

ment about 5:30 p.m. to make the second drug purchase. When he arrived Boerema had a quantity of cocaine on a scale for Scherr to view. Scherr, who had arranged to purchase 10 ounces of cocaine, agreed that the quantity appeared correct and then asked Boerema to accompany him outside to obtain payment. As Boerema left, he instructed codefendant to package the cocaine that was on the scale for Scherr. While outside and after receiving the $12,500 payment, Boerema was arrested. Then Scherr and the other surveillance officers entered the apartment and recovered the package of cocaine from the dining room table, where it had been placed for Scherr.

■ We believe that the facts set forth above sufficiently show that codefendant "delivered" a controlled substance. As codefendant notes, "attempt" is defined as a substantial step toward the commission of an act with the concurrent specific intent that the act be completed. (*People v. Elmore* (1971), 50 Ill. 2d 10, 276 N.E.2d 325.) The facts support the finding that codefendant attempted to deliver the cocaine. Even though Scherr never took physical possession of the cocaine prior to codefendant's arrest, the cocaine had been set apart, packaged and placed on the dining room table, for Scherr to take. These acts also sufficiently support the finding that codefendant relinquished control of the cocaine and thus evidence a constructive delivery of the controlled substance.

■ We also find no merit in defendant's argument that the State failed to prove that the weight of the substance delivered on November 25, 1986, was more than 30 grams. There was a factual stipulation concerning this matter which stated:

> "On the 25th the amount that was packaged on the table and along with the other cocaine that was [sic], from which it was cut.
> That tested positive in the same fashion in the amount of 279.84 grams."

Moreover, Officer Scherr testified that he arranged to purchase 10 ounces of cocaine at a price of $12,500. It was shown that he paid $12,500 at this time and he previously paid $1,400 to purchase one ounce of cocaine. Furthermore, Scherr testified that he observed the cocaine he was purchasing while it was on a scale on the dining room table and it appeared to weigh 10 ounces. Since it is commonly known that one ounce weighs about 28 grams, we believe that the evidence was sufficient to show beyond a reasonable doubt that Logue delivered more than 30 grams of a controlled substance.

We now consider codefendant's final issue, that his convictions for both possession with intent to deliver and delivery of a controlled sub-

stance cannot stand. Although codefendant's conviction for delivery of more than 30 grams of a controlled substance was premised on the quantity of cocaine that was delivered to Scherr and the possession-with-intent-to-deliver conviction was premised on the more than 160 grams of cocaine found in the kitchen, Logue argues that one of these convictions must be vacated because his criminal conduct of possessing both quantities of cocaine constituted only a single act. Codefendant acknowledges that section 401(a)(2) of the Illinois Controlled Substances Act delineates several ways in which that section may be violated and that he was charged with two separate and distinct violations of the section. However, codefendant argues that his conduct supported only one conviction. As authority for his position codefendant analogizes to *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1. Codefendant further supports his theory by arguing that possession with the intent to deliver is a lesser-included offense of delivery (*People v. Lewis* (1980), 83 Ill. 2d 296, 415 N.E.2d 319) and that his simultaneous possession of two separate quantities of cocaine constituted a single act. *People v. Branch* (1986), 143 Ill. App. 3d 679, 493 N.E.2d 417; *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200.

Initially, we note that this specific issue has apparently never been decided. Furthermore, we acknowledge that, generally, possession with the intent to deliver is a lesser-included offense of delivery (*People v. Lewis*, 83 Ill. 2d at 302) and, for this reason, simultaneous convictions for possession of a quantity of a controlled substance with the intent to deliver and the actual delivery of *that same quantity* of controlled substance constitute double jeopardy and require that one conviction be vacated. See *People v. Dale* (1985), 137 Ill. App. 3d 101, 484 N.E.2d 459; see also *People v. Stewart* (1977), 400 Mich. 540, 256 N.W.2d 31; *Jackson. v. Wyoming* (Wyo. 1974), 522 P.2d 1356.

■ However, we are not convinced that the further extension of the double jeopardy protection is appropriate under the circumstances presented in the case at bar. In this present case codefendant's convictions were premised upon evidence that he possessed a large quantity of cocaine over and above the quantity of cocaine that was actually delivered. Another jurisdiction, when considering this factor, concluded that multiple convictions and concurrent sentences were appropriate. (See *Wyoming v. Carter* (Wyo. 1986), 714 P.2d 1217.) We must agree.

In *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, the benchmark case in this State concerning the question of whether multiple convictions and concurrent sentences are appropriate, the court stated:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." 66 Ill. 2d at 566.

█ We believe that *under the circumstances presented in this case* the offense of possession with the intent to deliver cannot be said to be a lesser-included offense of the delivery conviction. Furthermore, we find that codefendant committed two separate "acts," one act being "possession" of a quantity of cocaine, and another act being the delivery of a distinctly separate quantity of cocaine, each act requiring proof independent from the other.

In *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, our supreme court decided that the simultaneous possession of different types of controlled substances constituted a single "act" of possession. Quoting from *Braden v. United States* (8th Cir. 1920), 270 F. 441, the court stated:

" 'If a person steals four horses from the barn of another, all being of different color, it would not be competent to charge the thief with four different larcenies when the horses were all taken at the same time and place.' " (71 Ill. 2d at 135.)

Using the same rationale here, the defendant, after stealing four horses, proceeded to sell one of these stolen horses. Certainly by selling that horse defendant committed a separate "act" that may be recognized and punished under the law. As a result, we find that the circuit court's determination was in line with the holding set forth in *King*.

We affirm the judgments of the circuit court with respect to both defendant and codefendant.

Affirmed.

JOHNSON and McMORROW, JJ., concur.